UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN LYNETTE LAMBERT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　Defendant. | No. 2:18-cv-02122 CKD<br><br><br><u>ORDER</u> |

　　　　Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding that her disability ended on January 1, 2015 under sections 223(f) and 1614(a)(3)(A) of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

////
///
///
///
////

BACKGROUND

Plaintiff, born in 1965, was found disabled beginning on June 1, 2005.[1] Administrative Transcript ("AT") 17, 26. The January 25, 2008 decision finding plaintiff disabled stated that she had rheumatoid arthritis. AT 19. Pursuant to a continuing disability review ("CDR"), the Commissioner found that plaintiff was no longer disabled as of January 1, 2015[2], in response to which she filed a request for reconsideration. AT 115-116, 144. Plaintiff attended a hearing before a disability hearing officer on July 14, 2015 (AT 152-165), and later received a

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[2] See 20 C.F.R. § 416.989 (explaining that the agency must evaluate recipients of SSI benefits from time to time to determine their continuing eligibility for benefits).

2

reconsideration determination that she was no longer disabled. AT 166-171. Plaintiff then requested and appeared for a hearing before an ALJ on November 18, 2016, and then again on April 18, 2017. AT 35-73, 74-104. In a decision dated August 7, 2017, the ALJ determined that plaintiff was not disabled since January 1, 2015. AT 17-27. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated January 25, 2008. This is known as the 'comparison point decision' or CPD.
>
> 2. At the time of the CPD, the claimant had the following medically determinable impairment: rheumatoid arthritis. This impairment was found to result in the residual functional capacity to perform sedentary work except she is unable to perform more than occasional standing or walking, use her hands to handle or her upper extremities to reach or push/pull.
>
> 3. Through the date of this decision, the claimant has not engaged in substantial gainful activity.
>
> 4. The medical evidence establishes that, since January 1, 2015, the claimant has had the following medically determinable impairments: rheumatoid arthritis; bilateral calcaneal spurs and right Achilles tendinopathy; and degenerative disc disease of the cervical spine and lumbar spine. These are the claimant's current impairments.
>
> 5. Since January 1, 2015 the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 6. Medical improvement occurred on January 1, 2015.
>
> 7. The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity.
>
> 8. Since January 1, 2015, the claimant has continued to have a severe impairment or combination of impairments.
>
> 9. Since January 1, 2015, based on the current impairments, the claimant has had the residual functional capacity to perform light work except: only occasional stooping, kneeling, crouching, and climbing; avoid hazards such as unprotected heights and dangerous moving machinery; must avoid cold; and she is limited to only occasional handling and fingering.
>
> 10. Since January 1, 2015, the claimant has been unable to perform past relevant work.
>
> 11. On January 1, 2015, the claimant was a younger individual 18-49.

> 12. The claimant has at least a high-school education and is able to communicate in English.
>
> 13. Since January 1, 2015, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.
>
> 14. Since January 1, 2015, considering the claimant's age, education, work experience, and residual functional capacity based on the current impairments, the claimant has been able to perform a significant number of jobs in the national economy.
>
> 15. The claimant's disability ended on January 1, 2015, and the claimant has not become disabled again since that date.

AT 19-27.

On June 18, 2018, the Appeals Council denied plaintiff's request for review on the grounds that the new medical evidence submitted by plaintiff's counsel did not provide a basis for changing the ALJ's decision. AT 1-5.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred by not further developing the record; (2) the ALJ improperly discounted plaintiff's subjective complaints; (3) the RFC finding is not supported by substantial evidence; (4) the ALJ's hypothetical questions to the vocational expert did not include all her limitations; and (5) the Appeals Council erred by denying plaintiff's request for review of additional records.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

When the agency reviews a claimant's continuing entitlement to benefits, it "must determine if there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [her] ability to work." 20 C.F.R. §§ 404.1594.(b)(1), (b)(7). "Medical improvement" is defined as

> any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled.... A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [claimant's] impairment(s).

20 C.F.R. § 416.994a(c). "In other words, the key question is not whether the claimant still suffered from the same medical problem he had when benefits were awarded, but whether the severity of the problem had decreased sufficiently to enable him to engage in gainful activity." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006).

ANALYSIS

    A. Duty to Develop the Record

Plaintiff contends that the ALJ should have further developed the medical record because his decision gave little weight to the opinions of State agency physicians Dr. Bhangoo, Dr. Pham, and Dr. Sohn. Plaintiff contends that the ALJ should have obtained another opinion "from a medical advisor to evaluate all the medical evidence, including right Achilles tendon surgery and continuing right ankle Achilles tendon enthesopathy (inflammation) that the State agency

5

consultants did not have the opportunity to review[.]" (ECF No. 13-1 at 24.)

In October 2014, Dr. Sarupinder Bhangoo performed a comprehensive internal medical evaluation of plaintiff. AT 425-428; see AT 22 (ALJ's summary). Plaintiff reported joint pain in her feet, hands, knees, shoulders, and elbows, as well as morning stiffness and pain. AT 425. Dr. Bhangoo noted that plaintiff sat and rose from a chair and climbed on and off the examination table without difficulty or apparent pain, and that she had normal gait although she could not tiptoe or heel walk without pain. AT 425-426. Upon physical examination, Dr. Bhangoo found normal muscle bulk/tone and measured plaintiff's motor strength at 5/5. AT 427. He diagnosed plaintiff with rheumatoid arthritis and opined that she could walk for up to six hours, sit for up to eight hours, and lift/carry up to 50 pounds occasionally and 25 pounds frequently. AT 428. Dr. Bhangoo further opined that plaintiff had no postural limitations and could perform handling and fingering for up to six hours total. AT 428. The ALJ accorded little weight to this opinion "because Dr. Bhangoo did not have the benefit of reviewing the other medical reports contained in the current record and this opinion is not consistent with the record in its entirety." AT 25.

State agency medical consultant Dr. M. Pham reviewed plaintiff's case file and filled out a Physical Residual Functional Capacity Assessment on December 30, 2014. AT 436-444; see AT 25 (ALJ's summary). Dr. Pham noted that plaintiff had been "diagnosed presumptively with rheumatoid arthritis by her family doctor without confirmatory laboratory and [follow-up]" and found the medical records did not support plaintiff's claim that her condition was "aggressive." AT 422. Dr. Pham reviewed x-rays of plaintiff's hands and feet and noted "mild erosive changes" of the hands "without evidence of swelling, effusion[,] or deformities on joint exam or x-rays that would support an aggressive form of rheumatoid arthritis." AT 423. Dr. Pham also found that the overall objective evidence showed that plaintiff had "significant" improvement with treatment. AT 423. Dr. Pham opined that plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; frequently climb, balance, stoop, kneel, crouch, and crawl; do frequent bilateral upper extremity handling and fingering; and should avoid concentrated exposure to extreme cold and hazards. AT 423, 438, 440.

State agency medical consultant Dr. M. Sohn reviewed plaintiff's medical file in May 2015 and opined that plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours total, and sit for six hours total. AT 477-483; see AT 25. Like Dr. Pham, Dr. Sohn opined that plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl; do frequent bilateral handling and fingering; and should avoid concentrated exposure to hazards. ATT 478-479. The ALJ accorded little weight to Dr. Pham's and Dr. Sohn's opinions "because the medical consultants did not have the benefit of personally observing and examining the claimant and these opinions are not consistent with the record as a whole." AT 25.

In determining RFC, the ALJ discussed the medical evidence through plaintiff's May 2017 surgery on her right Achilles tendon. AT 22-24. He concluded that plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." AT 25. The ALJ continued:

> The record reflects significant gaps in the claimant's history of treatment and relatively infrequent trips to the doctor for the allegedly disabling symptoms. Furthermore, the claimant's use of medications does not suggest the presence of impairments which is [sic] more limiting than found in this decision. . . . [T]he medical records reveal that [plaintiff's prescribed] medications have been relatively effective in controlling the claimant's symptoms.

AT 25. The resulting RFC limited plaintiff to light work with certain limitations, as set forth above. AT 21.

Disability hearings are not adversarial. See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (ALJ has duty to develop the record even when claimant is represented). Evidence raising an issue requiring the ALJ to investigate further depends on the case. Generally, there must be some objective evidence suggesting a condition that could have a material impact on the disability decision. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir. 1991). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288.)

Here, the ALJ discounted the State agency doctors' opinions because he found them inconsistent with the record as a whole, not because he found either the opinions or the record ambiguous. See Refugia D. V. v. Berryhill, 2018 WL 4043203, *12 (C.D. Cal. Aug. 22, 2018), citing Agadzhanyan v. Astrue, 357 F. App'x 148, 150 (9th Cir. 2009 ) (unpublished) ("The ALJ's independent duty to develop the record was not triggered, because he did not find any piece of evidence to be ambiguous or difficult to interpret."). The ALJ listed rheumatoid arthritis, bilateral calcaneal spurs, and right Achilles tendinopathy among plaintiff's medically determinable impairments after January 1, 2015, but found that these conditions "were being managed medically, and should be amenable to proper control" by treatment and medication compliance. AT 19. Thus, the decision accounted for these ongoing impairments in finding plaintiff no longer disabled as of January 1, 2015.

Plaintiff points out that no medical opinion takes into account her medical history after May 2015, including her August 2016 complaints of right heel pain, an MRI showing "severe focal tendinosis" in the right Achilles tendon; her March 2017 complaints of heel pain and difficulty walking and her diagnosis of Achilles tendinopathy; and her May 2017 status post right Achilles tendon surgery. See AT 23-34; AT 893-894. Plaintiff asserts that the ALJ had a duty to obtain "testimony from a medical advisor regarding her chronic rheumatoid arthritis and chronic inflammation that resulted in deformities of her right ankle and require surgical repair . . . which could reasonably change the outcome of the case by limiting the capacity to perform the standing and walking requirements of light exertion work."[3] (ECF No. 19 at 4.)

Importantly, however, the ALJ's nondisability finding was based on plaintiff's ability to perform light jobs that only require "standing and walking two hours maximum in an eight-hour day" (AT 94), specifically, the jobs of counter clerk and investigator of dealer accounts. AT 27, 97. In his hypothetical questions to the VE, the ALJ acknowledged that plaintiff's conditions limited standing, walking, handling, and fingering. Plaintiff has not shown that her post-2015

---

[3] Light work can involve "a good deal or walking or standing, or . . . involve[] sitting most of the time with some pushing and pulling of leg or arm controls." 20 C.F.R. sections 404.1567(b), 416.967(b).

conditions could have a material impact on the disability determination such as would require further development of the record.

B. Credibility

Plaintiff next argues that the ALJ erred in discounting plaintiff's subjective statements. The ALJ found that "[t]he evidence of record does not fully support the claimant's allegations." AT 22, 24. As noted above, the ALJ explained:

> I find the claimant's allegations less than fully consistent with the evidence. The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The record reflects significant gaps in the claimant's history of treatment and relatively infrequent trips to the doctor for the allegedly disabling symptoms. Furthermore, the claimant's use of medications does not suggest the presence of impairments which is [sic] more limiting than found in this decision. . . . [T]he medical records reveal that [plaintiff's prescribed] medications have been relatively effective in controlling the claimant's symptoms.

AT 25.

The ALJ first considered the objective medical evidence, summarized in the decision as to plaintiff's history of Graves' disease, dyslipidemia, reactive airway disease; however, "no aggressive treatment was recommended or anticipated for these conditions." AT 19. The ALJ also noted a history of obesity and rheumatoid arthritis. AT 19-20. Despite being diagnosed with rheumatoid arthritis in 2005, plaintiff did not seek regular care for this condition until 2014, when she requested a rheumatology referral. AT 22, 414.

The ALJ discussed plaintiff's responses to prescribed treatment for arthritis, depression, and right heel pain in 2015, 2016, and 2017. The decision noted that plaintiff "appeared to have responded well to" prescribed medication for arthritis in 2015, and that in 2016, plaintiff reported that prescribed medication had "helped to control her pain and stiffness." AT 23; see also AT 518, 697 (noting improvements in mental health). The decision further noted that in September 2016, she had "great pain relief after a cervical epidural steroid injection" and "was very pleased with the course of treatment." AT 23-24. The ALJ also discussed plaintiff's status in May 2017, post right Achilles tendon surgery. AT 24.

9

The ALJ also noted plaintiff's ability to perform daily activities including shopping, performing household chores, managing money, reading, personal care, and operating a motor vehicle. AT 20; see AT 52, 55-59, 81, 87-88, 101, 305. The undersigned concludes that the ALJ provided legally sufficient reasons to find plaintiff's subjective complaints less than fully credible.

### C. Residual Functional Capacity & Post-Decision Records

Plaintiff asserts that the RFC is not supported by substantial evidence because it did not incorporate two instructions that plaintiff elevate her right foot (AT 804, 821), chronic fatigue, and anxiety that allegedly limited interpersonal interactions.

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). In Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008), the Ninth Circuit held that an RFC adequately captures restrictions related to concentration, persistence, or pace when the assessment is consistent with restrictions identified in the medical testimony. See also, e.g., Schmidt v. Colvin, No. 2:12-cv-00016 KJN, 2013 WL 5372845, at *17 (E.D. Cal. Sept. 25, 2013) ("'Moderate' mental limitations are not necessarily inconsistent with an RFC for 'simple' tasks, as long as such assessment is generally consistent with the concrete restrictions identified in the medical evidence."), citing Stubbs-Danielson, 539 F.3d at 1174.

As defendant points out, no physician opined that plaintiff was functionally limited by a recommendation that she elevate her right foot "as much as possible" and/or the post-operative order that she keep her foot raised after surgery. No doctor opined that plaintiff had limits due to chronic fatigue, an alleged condition based on self-reports which the ALJ found not fully credible, as discussed above. There is no evidence that plaintiff had difficulty interacting with medical staff at her appointments. Treatment providers regularly found her to have normal mood

and affect, see, e.g., AT 540, 553, 556, 684, 810, 812, and in the functional area "interacting with others," the ALJ found her to have no limitation. AT 20. Moreover, plaintiff does not clearly explain what limitations should have been included in the RFC based on these alleged impairments.

In a second argument related to RFC, plaintiff asserts that the Appeals Council erred in upholding the ALJ's August 7, 2017 decision in light of post-decision medical records she submitted. The new records consisted of September 2017 x-rays of plaintiff's feet and ankles, and a brief letter, dated October 4, 2017, by physician's assistant Tou Xiong stating that plaintiff could not walk or ambulate for three hours. AT 1, 899-903. In a June 18, 2018 decision, the Appeals Council stated that it had considered this evidence but "found that [it] does not provide a basis for changing the Administrative Law Judge's decision." AT 1.

District courts "do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "When the Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner . . . and the district court reviews that decision for substantial evidence, based on the record as a whole." Id. at 1161–62 (citation and quotation marks omitted). Following Ramirez v. Shalala, 8 F.3d 1449 (9th Cir. 1993), the Ninth Circuit has "routinely considered evidence submitted for the first time to the Appeals Council to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence." Id. at 1163 (collecting cases).

The new x-rays submitted by plaintiff were taken weeks after the ALJ submitted his decision, and the note from Dr. Xiong that plaintiff could not "walk or ambulate for 3 hours" is not supported by any explanation. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected). (In any event, the ultimate finding of nondisability is based on available jobs that only require up to two hours' standing and walking, as discussed above.) Moreover, the x-rays document mild or normal findings consistent with the RFC for light work with limited standing and walking. For the

11

reasons discussed above, the court finds that the assessed RFC was adequately explained and grounded in substantial evidence.

D. Vocational Expert

Plaintiff contends that the VE's testimony does not constitute substantial evidence because the ALJ's hypothetical questions did not include all plaintiff's limitations. As this argument is derivative of the arguments discussed above, the court finds it to be without merit.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is granted; and

3. Judgment is entered for the Commissioner.

Dated: September 26, 2019

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/lambert2122.ssi.ckd